IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 19-cv-1082-WJM
Petty Offense Citation No. CO10/7179499

UNITED STATES OF AMERICA,

    Plaintiff,

v.

OSCAR RODRIGUEZ,

    Defendant.[1]

---

**ORDER ADOPTING SEPTEMBER 11, 2019 RECOMMENDATION OF
UNITED STATES MAGISTRATE JUDGE**

---

This matter is before the Court on the September 11, 2019 Recommendation of U.S. Magistrate Judge Kathleen M. Tafoya ("Recommendation") that Petitioner Oscar Rodriguez's "Motion to Vacate and Set Aside Pursuant to 28 U.S.C. § 2255" ("Motion") be denied. (ECF Nos. 1 & 11.) The Recommendation is incorporated herein by reference. *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b). Rodriguez filed an Objection to the Recommendation ("Objection"). (ECF No. 12.)

For the reasons explained below, the Recommendation is adopted in its entirety, the Motion is denied, and the case will be terminated.

---

[1] In this District, filings related to a habeas petition in a criminal case are typically filed on the criminal case docket, and the relative positions of the parties are not altered to reflect the civil habeas petition, *i.e.*, the Government remains the plaintiff and the defendant remains the defendant. In this case, the habeas petition and subsequent filings have been entered on the civil docket, but the parties have elected to retain the criminal case naming convention. The Court will refer to Rodriguez as "Petitioner."

## I. LEGAL STANDARD

### A. Rule 72(b) Standard

When a magistrate judge issues a recommendation on a dispositive matter, Federal Rule of Civil Procedure 72(b)(3) requires that the district judge "determine de novo any part of the magistrate judge's [recommendation] that has been properly objected to." An objection to a recommendation is properly made if it is both timely and specific. *United States v. 2121 East 30th St.*, 73 F.3d 1057, 1059–60 (10th Cir. 1996). An objection is sufficiently specific if it "enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute." *Id*. at 1059. In conducting its review, "[t]he district judge may accept, reject, or modify the [recommendation]; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

Plaintiff's Objection was timely and specific. (ECF No. 12.) Therefore, the Court reviews the issues before it *de novo.*

### B. Ineffective Assistance of Counsel Standard

In order to demonstrate ineffective assistance of counsel, a petitioner must show both that his attorney's performance was deficient and that the deficiency caused him prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). There is a "strong presumption" that an attorney "render[s] adequate assistance and [makes] all significant decisions in the exercise of reasonable professional judgment." *Id.* at 689–90. In order to demonstrate deficiency, the petitioner "must show that his attorney's performance fell below an objective standard of reasonableness." *United States v. Moya*, 676 F.3d

1211, 1213 (10th Cir. 2012). In order to demonstrate prejudice in the context of a guilty plea, the petitioner must show "a reasonable probability" that "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *United States v. Clingman*, 288 F.3d 1183, 1186 (10th Cir. 2002).

## II. BACKGROUND

### A. Factual Background

On November 17, 2017, Rodriguez was stopped by a police officer on the U.S. Air Force Academy grounds for driving faster than the posted speed limit. (ECF No. 9-1 at 8, 10.) He received two notices of violation, one for exceeding the speed limit and another for driving under the influence of alcohol or one or more drugs in violation of Colorado Revised Statute § 42-4-1301(1)(a). (*Id.* at 7–10.) Rodriguez's "Colorado Drug Influence Evaluation Facesheet" noted that he took two prescription drugs, Serquel and Depakote. (ECF No. 1-3 at 1.) The Report of Toxicological Examination reported that Rodriguez's blood contained 5.7 ng/mL of delta-9-tetrahydrocannabinol ("THC") and 131 ng/mL of 11-nor-9-carboxy-delta-9-tetrahydrocannabinol. (*Id.* at 3.) Under Colorado law, if a driver's blood contains five nanograms or more of THC, there is a permissible inference that a defendant was under the influence of one or more drugs. Colo. Rev. Stat. § 42-4-1301(6)(a)(IV).

On April 17, 2018, Rodriguez pled guilty to a sole lesser offense of "driving while ability impaired by alcohol, drugs or both" ("DWAI") in violation of Colorado Revised Statute § 42-4-1301(1)(b). (ECF No. 1-1; ECF No. 1-2 at 12.) The charge for exceeding the speed limit was dismissed. (ECF No. 1-2 at 3.) The plea agreement

3

does not specify whether Rodriguez was impaired by alcohol, drugs, or any particular drug. (*See* ECF No. 9-1 at 2–4.) At the hearing before Judge Tafoya, the Government articulated the factual basis for the plea on the record, and specified that the offense was related to marijuana, as opposed to alcohol, any other drug (prescription or otherwise), or a combination of drugs. (ECF No. 1-2 at 12–13.)

Rodriguez's plea agreement affirms that his "decision to enter the plea(s) of guilty is made after full and careful thought and with full understanding of my rights, the facts and circumstances of the case, and the potential consequences of my plea(s) of guilty." (ECF No. 9-1 at 4.) It further states: "If the defendant is an alien, the conviction could possibly lead to deportation." (*Id.* at 3.) Rodriguez signed and dated the plea agreement. (*Id.* at 4.)

At the hearing, Rodriguez's prior counsel stated that he provided the following information to his client about immigration consequences of the plea:

> I told him I'm not an immigration judge. I don't know how a DWAI necessarily affects him. He stated he doesn't believe that it's going to affect him at all because of the level of the charge. I asked him if he was comfortable proceeding without advisement from an immigration attorney. He stated that that's what he wanted to do, so I wanted to make sure that was on the record also.

(ECF No. 1-2 at 9.) Judge Tafoya added:

> Immigration, again, too, I actually have no [experience] with that either. I don't know if that will affect you. You know, my guess is it probably won't, but I don't know that for sure, so it could, but that's up to you.

(*Id.* at 9–10.) She then asked Rodriguez if he wished to proceed. He answered in the affirmative. (*Id.* at 10.)

4

Judge Tafoya accepted Rodriguez's plea and sentenced him to 12 months of unsupervised probation and 10 days of jail (suspended). (ECF No. 1-1.) She also ordered Rodriguez to complete a Level II Drug and Alcohol Awareness class, perform 30 hours of community service, and pay a fine of $305. (*Id.*) Judge Tafoya also issued a written judgment finding Rodriguez guilty of a DWAI, without specifying the type of impairment, and sentencing Rodriguez as described above. (*Id.*)

**B.      Habeas Petition and the Recommendation**

On April 12, 2019, Rodriguez filed the instant Motion asking the Court to vacate and set aside his conviction and sentence imposed. (ECF No. 1.) He claims that he was deprived of his Sixth Amendment right to effective assistance of counsel in two ways: (1) counsel failed to adequately advise him of the immigration consequences of his guilty plea, and (2) counsel failed to consult a forensic toxicologist. (*Id.* at 3, 5–12.) The Court referred the Motion to Judge Tafoya. (ECF No. 7.)

On September 11, 2019, Judge Tafoya issued her Recommendation, finding that Rodriguez had failed to establish ineffective assistance of counsel. (ECF No. 11.) The Recommendation found that prior counsel, the plea agreement, and the Court had informed Rodriguez that there was a *risk* of deportation if he pled guilty to a DWAI. (*Id.* at 5.) It found that at the time of entry of guilty plea, and even today, deportation was not a "truly clear" consequence of Rodriguez's guilty plea. (*Id.* at 7–9.) It also found that Rodriguez failed to show prejudice resulting from any failure to provide information about the risk of deportation. The Recommendation also rejected Rodriguez's claim

5

that prior counsel was ineffective for failing to consult a toxicologist, and concluded that the failure to consult such an expert was not prejudicial. (*Id.* at 9, 15.)

Rodriguez specifically and timely objected to each of Judge Tafoya's recommendations. (ECF No. 12.)

## III. ANALYSIS

**A.     Advisement of Immigration Consequences**

A criminal defendant's Sixth Amendment right to counsel extends to the plea-bargaining process, and a defendant is entitled to effective assistance of competent counsel during plea negotiations. *Lafler v. Cooper*, 566 U.S. 156, 162 (2012). This right to effective assistance of counsel can be violated when a defendant chooses to plead guilty based on his attorney's faulty or materially incomplete advice. *See Hill v. Lockhart*, 474 U.S. 52 (1985) (applying the two-part standard in *Strickland* to ineffective assistance claims arising out of the plea process). In *Padilla v. Kentucky*, 559 U.S. 356 (2010), the Supreme Court explicitly extended *Hill* to defense counsel's failure to inform a defendant about the immigration consequences of a guilty plea.

1.     <u>Performance Below Standard</u>

Rodriguez contends that his prior counsel's failure to adequately investigate and advise him on the immigration consequences of his guilty plea deprived him of his right to effective assistance of counsel. (ECF No. 1 at 9.)

In *Padilla*, the Supreme Court recognized that immigration law is a complex field in which the deportation consequences of a particular plea may be "unclear or uncertain." 559 U.S. at 369. It thus distinguished the duties of defense counsel when

6

the law is clear and when it is not:

> There will, therefore, undoubtedly be numerous situations in which the deportation consequences of a particular plea are unclear or uncertain.  The duty of the private practitioner in such cases is more limited.  When the law is not succinct and straightforward . . ., a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences.  But when the deportation consequence is truly clear, as it was in this case, the duty to give correct advice is equally clear.

*Id.*  Thus, when the immigration consequences are clear, counsel must provide accurate and correct advice; when consequences are not clear, counsel must advise the client of the *risk* of adverse consequences.  *Id.*; *see also United States v. Chang Hong*, 671 F.3d 1147, 1153 (10th Cir. 2011).

Rodriguez argues that the immigration consequences of his plea were clear, and thus his prior counsel's warning of the risk of immigration consequences was inadequate.  However, the Court agrees with Judge Tafoya that "deportation as a consequence was not truly clear at the time of entry of the guilty plea." (ECF No. 11 at 7.)

Section 237 of the Immigration and Nationality Act provides that "Any alien who at any time after admission has been convicted of a violation of . . . any law or regulation of a State, the United States, or a foreign country relating to a controlled substances (as defined in section 802 of Title 21), other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is deportable." 8 U.S.C. § 1227(a)(2)(B)(I).  A conviction under Colorado's DWAI statute is not a categorical violation relating to a controlled substance under 21 U.S.C. § 802.  *See Zu-*

*Chen Horng v. Lynch*, 658 F. App'x 415, 416 (10th Cir. 2016).

Rodriguez argues that an immigration judge may use the modified categorical approach to look at underlying documents and determine the type of drug at issue. (ECF No. 10 at 4; ECF No. 12 at 2–3.) *See Horng*, 658 F. App'x at 416. However, it is not clear that the modified categorical approach is appropriate under the circumstances. Moreover, the DWAI statute defines "drug" more broadly than "controlled substance" under 21 U.S.C. § 802. It is also unclear on the record whether Colorado treats the identity of a specific drug as an element that must be proven beyond a reasonable doubt. *See Horng*, 658 F. App'x at 417. Thus, it is uncertain whether an immigration judge could, as Rodriguez claims, "look past the judgment of the conviction." (ECF No. 12 at 3.) Thus, if anything on this record is clear, it is that the immigration consequences of Rodriguez's guilty plea are *not* clear.

Because the immigration consequences of Rodriguez's guilty plea were unclear or uncertain, his prior counsel was required to advise Rodriguez that his plea "may carry a risk of adverse immigration consequences." *Padilla*, 559 U.S. at 369. Rodriguez's plea agreement and prior counsel's advisement satisfied this requirement. Rodriguez's plea agreement clearly states that "the conviction could possibly lead to deportation" and that Rodriguez entered his plea with "full understanding of . . . the potential consequences of my plea(s) of guilty." (ECF No. 9-1 at 3–4.) At the hearing, Rodriguez's prior counsel informed the court of the following:

- he had advised his client that he was not an immigration judge and that he did not know how a DWAI would impact Rodriguez (ECF No. 1-2 at 9);
- he asked Rodriguez if he wished to consult immigration counsel before

  proceeding with the plea (*id.*);

- Rodriguez did not think there would be immigration consequences because of the level of the charge (*id.*); and

- Rodriguez wanted to proceed without advisement from an immigration attorney (*id.*).

The Court finds that these statements were sufficient to fulfill prior counsel's obligation to inform Rodriguez of the risk of adverse immigration consequences. *See United States v. Jung Yoon Choi*, 2018 WL 3375193, at *10 (D. Colo. July 11, 2018) (finding that prior counsel's warning that a guilty plea may have adverse immigration consequences was sufficient where petitioner was "not clearly subject to automatic removal").

  Rodriguez argues that Judge Tafoya contradicted prior counsel's risk advisement in a colloquy with Rodriguez when she stated "I don't know if that will affect you. You know, my guess is it probably won't, but I don't know that for sure, so it could but that's up to you." (*Id.* at 10; ECF No. 10 at 6; ECF No. 12 at 4.) Rodriguez claims that Judge Tafoya's statement "casts serious doubt upon the voluntariness of Mr. Rodriguez's guilty plea." (ECF No. 12 at 4.) But the inquiry on an ineffective assistance of counsel claim is on the performance of prior counsel, not the presiding judge. Rodriguez does not advance any argument that prior counsel should have intervened to clarify the risk of potential immigration consequences, or otherwise failed to competently advise Rodriguez after Judge Tafoya's comments at the hearing. Prior counsel had advised his client of the risk of immigration consequences, and Judge Tafoya's comments

are not relevant here.

reiterated the risk. (ECF No. 11 at 6 (clarifying that Judge Tafoya's comments were "meant to <u>warn</u> the Petitioner that there could be deportation consequences attached to a guilty plea and that the court did not have the legal knowledge to give him any assurances on the topic" (emphasis in original)).)[2]

2. <u>Prejudice to Rodriguez</u>

Because Rodriguez failed to establish ineffective performance, the Court is not required to address the prejudice prong of the *Strickland* test. *Strickland*, 466 U.S. at 697. Nonetheless, the Court will address it briefly given Rodriguez's Objection to the Recommendation.

To establish prejudice, Rodriguez must show a reasonable probability that but for the alleged errors, the result of the proceeding would have been different. For instance, Rodriguez may show that, absent the ineffective assistance of counsel, he would not have pleaded guilty and would have insisted on going to trial. *See Clingman*, 288 F.3d at 1186. He is also required to show that his "decision to reject the plea bargain would have been rational under the circumstances." *Padilla,* 559 U.S. at 372. "Courts should not upset a plea solely because of post hoc assertions from a defendant about how he

---

[2] To the extent that Rodriguez challenges his plea as involuntary because of an inadequate Rule 11 colloquy or violation of his due process rights because he was not sufficiently advised by the court that his conviction might lead to deportation, Rodriguez has failed to bring such claims. The Court need not address arguments not raised or inadequately developed. *United States v. Hunter*, 739 F.3d 492, 495 (10th Cir. 2013) (deeming waived an argument inadequately developed in opening brief); *Thompson R2-J Sch. Dist. v. Luke P., ex rel. Jeff P.*, 540 F.3d 1143, 1148 n.3 (10th Cir. 2008) (same). *See also United States v. Donjuan*, 720 Fed. App'x 486, 491 (10th Cir. 2018) ("[T]he court did not violate Defendant's rights because Defendant received correct and adequate advice during the court's colloquy."); *id.* at 491–92 ("Defendant fails to offer any authority to support his position that the district court owed him the same duty of advisement under the Due Process Clause as his defense attorney owed him under the Sixth Amendment.").

would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Lee v. United States*, 137 S. Ct. 1958, 1967 (2017).

First, the Court notes that Rodriguez is not currently subject to deportation proceedings, so it is unclear how he has actually been prejudiced by his plea to a DWAI violation that does not specify the source of impairment.

In addition, Rodriguez's conduct at the hearing does not show that he would have changed his plea had he known that he was at risk of deportation. In *Lee*, the Supreme Court found that "substantial and uncontroverted evidence" that the petitioner's plea was driven by the immigration consequence of the plea, and thus petitioner demonstrated a reasonable probability that, but for counsel's errors, he would not have pleaded guilty. 137 S. Ct. at 1967–69. Rodriguez, by contrast, did not express great concern about the immigration consequences of his plea. Indeed, the transcript shows that, if anything, Rodriguez was most concerned about the points accumulating on his driving record, his ability to retain his driving privileges with a DWAI as opposed to a DUI, and his ability to drive on the U.S. Air Force base. (ECF No. 1-2 at 7–9.) The Court therefore finds no evidence that Rodriguez would have pleaded differently had he been provided different information about the potential immigration consequences of his guilty plea.

B.     **Failure to Consult Toxicologist**

Rodriguez also contends that "competent defense counsel would have consulted with a forensic toxicologist" to determine whether Rodriguez was actually impaired by

11

his use of marijuana, and to use such an expert to establish actual innocence or a negotiate a non-marijuana based plea. (ECF No. 1 at 3.)

Judicial scrutiny of counsel's performance is highly deferential. *Strickland*, 466 U.S. at 689. Counsel's decisions are presumed to represent "sound trial strategy"; "[f]or counsel's performance to be constitutionally ineffective, it must have been completely unreasonable, not merely wrong." *Boyd v. Ward,* 179 F.3d 904, 914 (10th Cir. 1999) (internal quotation marks omitted). In short, the "question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Strickland,* 466 U.S. at 690.

The Court agrees with Judge Tafoya that "counsel's strategic decision to instead support acceptance of a plea agreement involving a comparatively small fine, one year of unsupervised probation, and a suspended jail sentence . . . cannot be said to fall below the standard of reasonable competence." (ECF No. 11 at 12.) As Judge Tafoya recognized, Rodriguez had a positive blood test, performed poorly on field sobriety tests, appeared to the police officer to be under the influence, and admitted to use of marijuana and prescription drugs. (ECF No. 11 at 10.) Rodriguez's performance on the field sobriety tests and the officer's observations are evidence that, at the time of the stop, Rodriguez was impaired by marijuana or a combination of marijuana, Serquel, and Depakote. Even if an expert opined that the amount of marijuana in Rodriguez's system was not alone sufficient for impairment, such an opinion does not address potential impairment resulting from a combination of marijuana, Serquel, and Depakote. Under the circumstances, counseling a client to accept a plea to a DWAI instead of a

DUI and speeding ticket does not amount to incompetence under prevailing professional norms.

Moreover, Rodriguez has not shown that he was prejudiced by his plea to a DWAI. At most, hiring a toxicology expert would have opened an additional avenue of defense at trial as to the source of Rodriguez's impairment on the DUI charge. The speeding charge would have remained. Even had prior counsel hired a toxicology expert, there is no basis on this record for the Court to conclude that Rodriguez would have made a different decision regarding the plea agreement. Rodriguez thus fails to show that he was prejudiced by prior counsel's decision not to consult a toxicologist.

## IV. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. The Recommendation of the United States Magistrate Judge (ECF No. 11) is ADOPTED;

2. Rodriguez's Objection (ECF No. 12) is OVERRULED;

3. Rodriguez's Motion to Vacate and Set Aside Pursuant to 28 U.S.C. § 2255 (ECF No. 1) is DENIED;

4. Pursuant to 28 U.S.C. § 2253(c), no certificate of appealability will issue because Rodriguez has not made a substantial showing of the denial of a constitutional right; and

5. The Clerk shall enter final judgment in favor of the United States and against Rodriguez, and shall terminate this case. The parties shall bear their own costs.

Dated this 3rd day of February, 2020.

BY THE COURT:

William J. Martínez
United States District Judge